DOWNEY, Judge.
Appellee, Robert F. Wilson, Inc. (Wilson), entered into a contract with the Broward County Board of Education to construct a public school. Wilson, as general contractor, also entered into a subcontract with R.L.P. Site Development Inc. (R.L.P.) for a portion of said work and R.L.P. contracted with Southeastern Municipal Supply Co. (Southeastern) to furnish materials for the project. After Southeastern began furnishing materials to R.L.P. for the job, Southeastern furnished Wilson and the ap-pellee bonding companies with a preliminary notice pursuant to section 255.05, Florida Statutes (1987).
In the course of preparing a progress payment for R.L.P., as was its custom, Wilson contacted Southeastern to determine the status of Southeastern’s account with R.L.P. and was advised that Southeastern was owed approximately $34,000. Thereupon, Wilson drew a check payable jointly to R.L.P. and Southeastern. R.L. P.’s president, Perkins, refused to accept the joint check and a conference call was made to Southeastern, after which Wilson drew a new check payable only to R.L.P. When Southeastern was not paid, it commenced this action to recover the balance due it from R.L.P. From a judgment in its favor for less than its entire claim, Southeastern has perfected this appeal.
The trial court found that Southeastern waived or was estopped to recover from Wilson and its bonding companies by refusing the joint check payable to it and R.L.P., which had been tendered as payment, and by relinquishing the right to be paid by the joint check, or by approving the issuance of a check made out solely to R.L.P.
The decision in this case turns upon the interpretations of the conduct of the parties in the preparation of the checks involved and their conversations with reference to the manner of said payment. Taken in a light most favorable to the judgment, it appears that Denise Gamio, Wilson’s bookeeper in charge of accounts payable, called Southeastern and inquired of Linda Snow, Southeastern’s bookkeeper in charge of accounts receivable, regarding the balance of R.L.P.’s account. Snow advised that R.L.P. owed them $34,000 and the progress payment should be made jointly. This conformed to Wilson’s custom of making joint payments to subcontractors who are indebted to materialmen for materials furnished to the job site. After Wilson drew a check for said payment jointly to R.L.P. and Southeastern, Perkins, president of R.L.P., objected to the joint form of the check, resulting in the parties’ contacting Southeastern. This time they dealt with Mr. Paup, Southeastern’s credit manager. Ferrera, Wilson’s project manager, advised Paup that Perkins objected to the joint payment. Perkins also talked to Paup and told him that R.L.P. wanted to make the payment to Southeastern itself. Paup then stated that a joint check was not necessary; that Southeastern had no authority to demand a joint check. Paup went on to say that Southeastern did not care who *261 paid it as long as it was paid. Thereupon, Wilson drew a new check payable to R.L.P. alone.
Paup testified that he told Ferrera and Perkins that Southeastern did not care who made the payment and that Southeastern would give a release for the amount paid. However, the trial judge heard the evidence and, no doubt, felt that Paup had either not said, or had not made it clear, that Southeastern was not signing a release for the payment unless someone first paid it the amount due. The trial court could well be persuaded to that conclusion because it does not make sense that Wilson would deviate from its customary practice, nullify the joint check previously drawn, and pay the funds to R.L.P. without being assured by Southeastern that it would waive its right to payment before furnishing a release of lien for that payment. Ferrera testified that Southeastern waived its right to be paid prior to furnishing a release. Southeastern’s objection to the conclusionary testimony was sustained and Ferrera testified that he believed Paup had said that he waived it.
The parties have extensively argued the pros and cons of equitable estoppel. However, one of the bases cited by the court for its finding in favor of Wilson is waiver, which indicates the trial court believed Wilson’s version of the conversations between the parties. We find that the record viewed in that light supports the judgment in favor of Wilson.
We therefore affirm the judgment appealed from.
WESSEL, JOHN D., Associate Judge, concurs.
WARNER, J., dissents, with opinion.